UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

IDC FINANCIAL PUBLISHING, INC.,

                Plaintiff,

      - against -              Case No. 2:15-01085-PP

BONDDESK GROUP, LLC, et al.,

                Defendants.

**TRADEWEB DEFENDANTS' OPPOSITION TO PLAINTIFF IDC FINANCIAL PUBLISHING'S CIVIL L.R. 7(h) EXPEDITED NON-DISPOSITIVE MOTION**

      Fed. R. Civ. P. 26(b)(1) is clear: discovery is limited to information that is both "relevant to ... [a] claim or defense and proportional to the needs of the case...." Irrelevant information does not suddenly become relevant—or discoverable—just because it happens to be physically adjacent to discoverable information in a party's files. But that is what IDC Financial Publishing, Inc. ("IDC") seeks in its motion to compel (Dkt. 46). Having been provided with all information reflecting how and where IDC financial strength ratings were discussed between BondDesk Group LLC or Tradeweb Markets LLC (together, "Tradeweb") and any of their customers, IDC now seeks an order requiring Tradeweb to turn over *other* information in those files and documents about *other* aspects of its relationship with those customers—even though the withheld material has nothing to do with IDC or the subject matter of this case. This is a classic fishing expedition and should be denied.

      Tradeweb operates an electronic trading platform for buying and selling fixed income securities. Tradeweb's trading screens display many items of information, including third-party data. IDC's financial strength ratings are just one piece of information a trader may find useful to a decision to buy or sell just one particular type of fixed income product—a certificate of

deposit ("CD"). However, IDC rankings are not essential, and traders may choose not to have that information displayed on their CD trading screens. Nothing about Tradeweb's discussions with its customers concerning whether to include IDC financial strength ratios as a search criteria for CDs (all of which Tradeweb has produced) entitles IDC to explore Tradeweb's arrangements with its customers concerning the many *other* aspects of their business relationship, particularly concerning the customers' trading of *other* products to which IDC's ratings do not relate, much less what financial arrangements apply to Tradeweb's relationship with its customers about those other products, or its overall revenues from each of its customers. Discovery is not a license to peruse all aspects of an adversary's financial and contractual records.

Notably, the 2015 amendments to Rule 26(b) "were designed to protect against over-discovery," *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 308 (S.D. Ind. 2016), and to "crystalize[] the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality," *In re: Takata Airbag Prods. Liab. Litig.*, 2016 WL 1460143, at *2 (S.D. Fla. Feb. 24, 2016); *see also Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 2017 WL 3130414, at *1 (E.D. Wis. July 24, 2017). IDC's motion ignores the language of the rule and relies almost exclusively on cases predating the 2015 amendment. Consistent with Rule 26(b)'s emphasis on proportionality, a party is "not entitled to receive every piece of irrelevant information in responsive documents if the producing party has a persuasive reason for why that information should be withheld." *Takata*, 2016 WL 1460143, at *2.

Even before the 2015 amendment, courts in this circuit regularly held that redacting portions of documents as nonresponsive was an "appropriate" solution "where the information redacted was not relevant to the issues in the case." *Abbott v. Lockheed Martin Corp.*, 2009 WL 511866, at *2 (S.D. Ill. Feb. 27, 2009); *accord RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209,

222 (N.D. Ill. 2013). That is precisely what happened here. Because many of Tradeweb's documents concern multiple facets of its relationship with a financial institution or other customer, Tradeweb produced information relating to the IDC functionality, but withheld as irrelevant the unrelated information about other aspects of its business relationships, including customers' individually customized trading parameters. *See* Kleinman Decl. ¶¶ 4- 5.

Such information has nothing to do with the utility of IDC's ratings or the distribution of those ratings to *Fidelity*—the only Tradeweb customer at issue in this case.[1] The mere fact that tidbits of discoverable IDC information sometimes appears in the same document or database as information that is irrelevant and otherwise not discoverable does not mean that IDC thereby acquires a right to discovery of that irrelevant information, any more than it would have such a right if the irrelevant information were contained in a separate document. Notably, many of the documents at issue contain only passing references to IDC amidst dozens of pages of unrelated information about Tradeweb's customer relationships. Tradeweb produced without redactions all information related to IDC ratings or customer requests for that information. *See* Kleinman Decl. ¶ 4. Irrelevant materials need not be produced. *In re: Zoloft Prods. Liab. Litig.*, 2013 WL 8445354, at *4-5 (E.D. Pa. Oct. 31, 2013) (denying motion to compel production of non-responsive documents in document families); *accord Takata*, 2016 WL 1460143, at *3 (same).

Tradeweb labeled nonresponsive portions of documents with boxes reading "Redacted (Nonresponsive)" and replaced nonresponsive attachments with slip sheets marked "Withheld As Nonresponsive." Kleinman Decl. ¶ 3. Only 626 documents (out of thousands produced) are at issue (*id.*), and if the Court wishes, Tradeweb will promptly submit all or a subset of them for *in camera* review so the Court can satisfy itself that the withheld material is truly irrelevant. IDC's
3

barebones contention that Tradeweb's "promises or processes regarding customer requests" generally are somehow relevant to its claim that screens for Fidelity users contained unauthorized IDC ratings data (Dkt. 46 at 4) argues too much. Under IDC's theory, everything Tradeweb does with its customers to respond to requests about other subjects would thereby become relevant. IDC does not get to probe all of Tradeweb's business dealings just because one contract is at issue.[2] Tradeweb's redactions are necessary to protect "business information that is wholly unrelated" to IDC's ratings data. *Hintz v. Goen Techs. Corp.*, 2005 WL 6567754, at *2 (N.D. Ind. Aug. 11, 2005). The motion should be denied.

Dated: September 14, 2017

                                FRIED, FRANK, HARRIS, SHRIVER
                                    & JACOBSON LLP

                                By:     /s/ Peter L. Simmons
                                        Peter L. Simmons
                                        Michael A. Kleinman

                                One New York Plaza
                                New York, New York 10004
                                (212) 859-8000
                                peter.simmons@friedfrank.com
                                michael.kleinman@friedfrank.com

                                *Attorneys for Defendants BondDesk Group*
                                  *LLC and Tradeweb Markets LLC*

---

[1]    IDC claims that certain redactions are "not explained at all." Dkt. 46 at 1. Those other redactions, which were made using black boxes, pertain to attorney-client privilege and work product. Kleinman Decl. ¶ 2.

[2]    IDC's assertion that the redacted information might bolster its damages argument (Dkt. 46 at 3) reinforces that this is nothing but fishing. IDC's contract with Tradeweb—which is attached to the complaint—provides that only IDC (not Tradeweb) had the right to negotiate with customers regarding access to IDC's ratings on Tradeweb's platform and regarding the fees that would be paid directly from the customer to IDC for that access. Tradeweb provides the service to its customers for no incremental revenue once IDC licenses the customer. *See* Kleinman Decl., Ex. A, ¶ 19. IDC's economics thus are contractually required to be set between IDC and the customer without knowledge of or access to any information about Tradeweb's financial arrangements with its customers. IDC's theory in its motion that it now needs Tradeweb's information to determine damages is a makeweight that runs counter to the terms of the governing agreement.